1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                             CENTRAL DISTRICT OF CALIFORNIA

10

11      BARBARA ANN LETTER,                     Case No. 2:25-cv-07757-HDV-MAA

12                    Plaintiff,

13      v.                                       **ORDER DENYING PLAINTIFF'S
                                                 MOTION TO REMAND AND FOR
14                                               ATTORNEY'S FEES [15]**

15      GENERAL MOTORS LLC, *et al.*

16                    Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2      This lemon law action arises out of Plaintiff Barbara Ann Letter's purchase of a used 2019

3    Cadillac XT4 from Suburban Buick GMC Cadillac.  Plaintiff alleges that her vehicle experienced

4    "transmission, engine, exhaust system and cooling system defects" during the warranty period.

5      Before the Court is Plaintiff's Motion to Remand ("Motion") [Dkt. 15], which asserts that the

6    removal of this case on August 19, 2025 was untimely.  Plaintiff maintains that removability was

7    clear from the face of the complaint filed in Los Angeles Superior Court.  Plaintiff also attempts to

8    argue, in the alternative, that removability is still not clear—that Defendant has not established that

9    this Court has subject-matter jurisdiction.

10      For the reasons discussed thoroughly in *Chavarin v. General Motors LLC*, No. 2:25-cv-

11    06852-HDV-MBK (C.D. Cal. Oct. 29, 2025) [Dkt. 28] ("*Chavarin* Order"), the Court concludes that

12    the complaint did not provide sufficient grounds for triggering the 30-day removal clock under 28

13    U.S.C. § 1446(b)(1).  The removal was therefore timely.  As to the merits of subject-matter

14    jurisdiction, the Court concludes that Defendant has met its burden, by the lower "preponderance of

15    the evidence" standard, to establish that removal was proper.  The Motion is denied.[1]

16    **II.    BACKGROUND**

17      Plaintiff purchased a used 2019 Cadillac XT4 (the "Vehicle") in June 2020.  First Amended

18    Complaint ("FAC") [Dkt. 1-1] ¶¶ 6, 9.  Plaintiff alleges the vehicle was defective and Defendant

19    General Motors failed to fulfill its warranty obligations.  *Id.* ¶¶ 12, 14.

20      Plaintiff filed a lawsuit in Los Angeles Superior Court, and served Defendant on February 4,

21    2025.  Motion at 1–2; Declaration of Michelle Yang in Support of Motion ("Yang Decl.") [Dkt. 21]

22    ¶¶ 3, 5.  The FAC, filed on April 1, 2025, alleges claims under the California Song-Beverly

23    Consumer Warranty Act ("Song-Beverly"), the federal Magnuson-Moss Warranty Act ("MMWA"),

24    the Uniform Commercial Code, and the California Consumer Legal Remedies Act.  FAC ¶¶ 8–71.[2]

25

26    [1] Because the Motion to Remand is denied, Plaintiff's attendant motion for attorneys' fees is also
     denied.

27

28    [2] The original complaint appears to have included only Plaintiff's Song-Beverly and MMWA claims.
     *See* Motion at 1; FAC ¶¶ 45–71 (bolded).

1  It identifies Plaintiff as a resident of Laguna Woods, California, but provides no further information

2  about domicile or citizenship.  *Id.* ¶ 2.  Defendant filed its Answer on June 20, 2025.  [Dkt. 1-2].

3         On August 19, 2025, Plaintiff's counsel provided Defendants' counsel a copy of the

4  Vehicle's sales contract.  *See* Declaration of Mei Xuan in Support of Defendant's Opposition ("Xuan

5  Decl.") [Dkt. 16-1] ¶ 2, Ex. A ("Sales Contract"); *see also* Yang Decl. ¶ 7.

6         That same day, Defendant removed the case, alleging that this Court has diversity

7  jurisdiction.  Notice of Removal at 2–5 [Dkt. 1].  Plaintiff filed the instant Motion on September 18,

8  2025.  After full briefing, see Opposition [Dkt. 16]; Reply [Dkt. 17], the Court deemed the matter

9  appropriate for resolution without oral argument and took it under submission.  [Dkt. 19].

10  **III.  LEGAL STANDARD**

11         Generally, a civil action filed in state court may properly be removed if there is federal

12  subject-matter jurisdiction at the time of removal.  *See* 28 U.S.C. §§ 1441 (removal), 1331 (federal

13  question jurisdiction), 1332 (diversity jurisdiction).

14         A notice of removal must be filed within 30 days of the initial pleading or summons if, using

15  a "reasonable amount of intelligence," the grounds for removability can be ascertained from such

16  pleading or summons.  28 U.S.C. § 1446(b)(1); *Kuxhausen v. BMW Fin. Servs. NA*, 707 F.3d 1136,

17  1139–40 (9th Cir. 2013).  Should the initial pleading not reveal grounds for removal, the notice of

18  removal must be filed within 30 days of the defendant receiving an "amended pleading, motion,

19  order or other paper" which establishes that removability is "unequivocally clear and certain."  28

20  U.S.C. § 1446(b)(3); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005); *Dietrich

21  v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021).  These 30-day time limits, although procedural

22  in nature, are mandatory, and a successful challenge to removal based on a late notice requires

23  remand.  *Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014).

24         As to the merits of federal subject-matter jurisdiction, the removing party bears the burden of

25  establishing it.  *Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999).  The notice of

26  removal need only include a "short and plain statement," or "plausible allegation," of "the grounds

27  for removal."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87–89 (2014) (quoting 28

28  U.S.C. § 1446(a)).  Where the plaintiff challenges the removing defendant's allegations, however,

1  "both sides submit proof and the court decides, by a preponderance of the evidence," whether the

2  jurisdictional requirements have been satisfied.  *Id*. at 82.

3      "[W]hether a defendant can establish that federal jurisdiction exists and . . . when the thirty-

4  day time period begins are not two sides of the same coin."  *Kuxhausen*, 707 F.3d at 1141 n.3.  If a

5  Defendant, based on its own knowledge or investigation, knows of and can plausibly allege facts

6  which confer federal jurisdiction, it *may* remove, even if those facts are not so clear from the face of

7  the complaint or an "other paper" such that the removal clocks have started running.  *See id.* at

8  1139–42.

9  **IV.    DISCUSSION**

10     Plaintiff makes several—sometimes contradictory—arguments in support of remand.

11     The first regards the timeliness of Defendant's removal.  Plaintiff's counsel has raised similar

12 arguments in a number of other lemon law cases against General Motors in recent months.  This

13 Court first considered and decided the relevant issues in *Chavarin v. General Motors LLC*, No. 2:25-

14 cv-06852-HDV-MBK, 2025 WL 3030875 (C.D. Cal. Oct. 29, 2025).  Plaintiff's timeliness

15 arguments here fail for the same reasons as in *Chavarin*.

16     Removability was not apparent from the face of the complaint.  Plaintiff here focuses on the

17 federal MMWA claim, *see* Motion at i, 1, 4–9, but there is federal question jurisdiction under that

18 statute only if the amount in controversy *on the MMWA claims* is at least $50,000.  *Chavarin*, 2025

19 WL 3030875 at *2 & n.2. And Plaintiff's complaint does not include any allegations as to values

20 (e.g., sales price, market value) that would give Defendant notice that her claims were worth more

21 than this.  *Id.* at *3.[3]  Defendant's removal was thus timely.[4]

22     Plaintiff next argues that Defendant has not yet met its burden of establishing federal

23

24 [3] Diversity-related removability also could not be ascertained from the complaint, both because the
complaint contained no facts suggesting that the $75,000 amount in controversy was met, and

25 because the allegations of Plaintiff's California residency do not set forth her domicile or citizenship.

26 *Chavarin*, 2025 WL 3030875 at *3.

27 [4] Plaintiff does not argue that the FAC triggered the second 30-day removal period 28 U.S.C.
§ 1446(b)(3), and the Court is satisfied that it did not.  The FAC did not remedy the indeterminacy of

28 the initial complaint.

jurisdiction.  *See* Motion at 9–10; Reply at 3–11.  As an initial matter, the Court notes that, while parties generally are allowed to make arguments in the alternative, this argument is not just an alternative to Plaintiff's argument regarding the timeliness of removal—it is flatly inconsistent with it.  Plaintiff effectively argues both that removability was clear from the complaint and that removability is still not clear.  *Compare* Motion at 6 ("[I]t is impossible to believe that Defendant could not ascertain the amount in controversy exceeded $50,000.00 based on the face of the complaint alone.") *with id.* at 9 ("Defendant has not identified any factual allegations in the Complaint or produced any evidence showing that Plaintiff's actual damages approach or exceed $50,000.").  Presenting both positions at once borders on sanctionable.  *See* Fed. R. Civ. P. 11(b) (By presenting a written motion to the court, an attorney certifies that (1) "it is not being presented for any improper purpose"; (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument"; (3) "the factual contentions have evidentiary support"; and (4) "the denials of factual contentions are warranted on the evidence[.]").

On the merits, the Court is satisfied that there is diversity jurisdiction here.  Diversity jurisdiction exists when there is complete diversity of parties and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  Defendant has alleged that Plaintiff is a citizen of California and Defendant is a citizen of Michigan and Delaware.  Plaintiff has not contested these allegations.  *See generally* Motion; Reply.

As to the amount in controversy, Plaintiff seeks relief under the Song-Beverly Act, which allows a plaintiff to recover actual damages, civil penalties up to "two times the amount of actual damages," and costs and expenses, including attorneys' fees.  Cal. Civ. Code § 1794.  "In the case of restitution," actual damages are "restitution in an amount equal to the actual price paid or payable by the buyer," reduced by offsets for the use by the buyer prior to the first delivery for repair, negative equity, manufacturer's rebates, any third-party sold optional equipment, and unpaid financing.  *Id.* § 1793.2(d)(2); Cal. Code Civ. Pro. § 871.27(b)–(d), (f).

The Sales Contract reveals that the cash price of the Vehicle and accessories was $40,054.67.  Sales Contract at 3.  It also showed that the total cash price (including collateral charges, sales tax, and a service contract) was $47,242.49; that Plaintiff made a down payment of $9,000; and that she

1    financed $38,274.24, incurring financing charges of $4,889.04—for a total cost of $52,163.28.  *Id.* at

2    2–3.  The Sales Contract notes that the mileage on the vehicle at the time of sale was 4,905.  *Id.* at 2.

3    Using the cash price and mileage at sale from the Sales Contract, together with its own records of the

4    potentially relevant repairs, Defendant calculated an estimated mileage offset of $1,746.05.

5    Opposition at 16–17; Xuan Decl., Ex. B; Cal. Civ. Code § 1793.2(d)(2)(C).[5]  Defendant identified

6    other offsets of $8,962.00.  Opposition at 17; Sales Contract at 2.[6]  Defendant also estimated, based

7    on the loan terms in the Sales Contract, that Plaintiff made approximately 61 monthly payments of

8    $599.49 each, leaving a remaining $6,397.62 in unpaid financing as of August 19, 2025, when the

9    case was removed.  Opposition at 17; Sales Contract.  Defendant also plausibly maintains that, if

10    litigated, this matter will not resolve before the final due date of June 2026, making the estimate of

11    unpaid financing $0.  Opposition at 17.  GM therefore estimates actual damages at $41,455.23.  *Id.*

12            Plaintiff asserts that "Defendant has provided no evidence to support" its assertion of actual

13    damages,[7] Reply at 3, but offers nothing concrete—no evidence that a different repair is the first

14    relevant one, no argument that Defendant has misunderstood the statutory damages and offsets

15    scheme, and no contrary calculations, etc.—to challenge the calculations described above.  The

16    Court therefore finds that $41,455.23 is an appropriate, non-speculative estimate of the actual

17    damages at stake in this lawsuit.[8]

18

19    _____

20    [5] Defendant appears to have assumed that the first repair was the first relevant one.  If we assume
      instead that the *last* repair for which Defendant has records was the first relevant one, the mileage
21    offset is about $11,763.06.

22    [6] Defendant characterized these as "offsets for optional third-party contracts," but, based on the
      Court's review of the Sales Contract, this sum seems to be more properly characterized as the offset
23    for *both* third-party contracts ($3,962.00) and the manufacturer's rebate ($5,000).  *See* Cal. Code
      Civ. Pro. § 871.27(b), (d).
24

25    [7] For example, Plaintiff avers that Defendant "fail[ed] to address the mileage offset," and "does not
      point to any . . . date or mileage of the first repair attempt, from which a mileage offset could even
26    be calculated."  Reply at 4.  This is demonstrably false.  *See* Opposition at 16–17.

27    [8] Even being super charitable to Plaintiff, if we recalculate actual damages using the more
      conservative mileage offset described *supra* note 4 and the unpaid financing as of the time of
28    removal, the estimate of actual damages is still $25,040.60.

1    Moreover, Plaintiff also seeks civil penalties under the Song-Beverly Act, *see* FAC at 10;

2    Cal. Civ. Code 1794(c).  Plaintiff's potential recovery in civil penalties is double the actual damages,

3    or $82,910.46.[9]  "[C]ivil penalties are a key component of the relief sought in Song-Beverly actions,

4    and they are undoubtedly part of what is at stake"—or in controversy—"in the litigation." *Ladd v.*

5    *Mercedes-Benz USA, LLC*, No. 2:25-cv-02879-HDV-BFM, 2025 WL 2081572, at *3 (C.D. Cal. July

6    24, 2025).  That brings the amount in controversy to $124,365.69, easily exceeding the jurisdictional

7    threshold before even accounting for attorneys' fees.[10]  The Court thus has diversity jurisdiction over

8    the action.

9    **V.    CONCLUSION**

10    For the foregoing reasons, Plaintiff's Motion is ***denied***.

11

12    Dated:    November 12, 2025

13

14    _____
             Hernán D. Vera

15             United States District Judge

16

17

18

19

20

21

22

23

24

25

26    [9] Again, even more conservatively, *see supra* note 7, $50,081.20.

27

28    [10] Although it is closer, even the more conservative estimate of the amount in controversy as calculated *supra* notes 7–8, exceeds $75,000.